IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM WILLIS, by and through his educational representative DENISE HAMPTON<br><br>Plaintiff,<br><br>v.<br><br>ADULT AND PRISON EDUCATION RESOURCES WORKSHOP<br><br>Defendant. | Civil Action No. 22-1615-SRF<br>(Consolidated) |
| DELAWARE DEPARTMENT OF EDUCATION, ADULT AND PRISON EDUCATION RESOURCES WORKSHOP<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM WILLIS and DENISE HAMPTON, Educational Representative<br><br>Defendant. | |
| K.M.<br><br>Plaintiff,<br><br>v.<br><br>ADULT AND PRISON EDUCATION RESOURCES WORKSHOP<br><br>Defendant. | Civil Action No. 23-391-SRF<br>(Consolidated) |

| | |
|---|---|
| DELAWARE DEPARTMENT OF EDUCATION, ADULT AND PRISON EDUCATION RESOURCES WORKSHOP )<br><br>Plaintiff, )<br><br>v. )<br><br>K.M. )<br><br>Defendant. ) | |
| C.G., )<br><br>Plaintiff, )<br><br>v. )<br><br>ADULT AND PRISON EDUCATION RESOURCES WORKGROUP, )<br><br>Defendant. ) | Civil Action No. 23-468-SRF<br>(Consolidated) |
| DELAWARE DEPARTMENT OF EDUCATION, ADULT AND PRISON EDUCATION RESOURCES WORKGROUP, )<br><br>Plaintiff, )<br><br>v. )<br><br>C.G., )<br><br>Defendant. ) | |

### **MEMORANDUM ORDER**[1]

---

[1] On June 3, 2024, the parties consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings. (C.A. No. 22-1615-SRF, D.I. 58; C.A. No. 23-391-SRF, D.I. 47; C.A. No. 23-468-SRF, D.I. 35)

2

At Wilmington this **24th** day of **June, 2025**, the court having considered the pending motions to stay the underlying administrative decisions granting injunctive relief in the above-captioned related civil actions (C.A. No. 22-1615-SRF, D.I. 45; C.A. No. 23-391-SRF, D.I. 36; C.A. No. 23-468-SRF, D.I. 25),[2] IT IS ORDERED that the motions to stay are DENIED for the following reasons.

1. **Background.** William Willis ("Willis"), K.M., and C.G. (collectively, the "Students") brought these civil actions against Adult and Prison Education Resources Workshop of the Delaware Department of Education ("APER") seeking to recover attorneys' fees and costs. The Students are incarcerated individuals with disabilities who qualify for educational benefits and procedural protections under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"). (D.I. 2 at ¶ 3) APER is a workgroup of the Delaware Department of Education ("DDOE") that is responsible for providing secondary and vocational education to individuals incarcerated in Delaware's correctional facilities. (*Id.* at ¶ 4)

2. In due process hearings held pursuant to 20 U.S.C. § 1415(f), the Students alleged that APER failed to comply with various provisions of the IDEA and, as a result, they were deprived of a free and appropriate public education ("FAPE"). (*Id.* at ¶¶ 7, 10) The hearing panels ruled in favor of the Students and ordered various forms of injunctive relief, including the creation of a compensatory education fund. (*Id.* at ¶¶ 11-12) The Students, as the prevailing

---

[2] The motion to stay and associated briefing in Civil Action No. 22-1615-SRF are found at D.I. 45, D.I. 46, and D.I. 47. In Civil Action No. 23-391-SRF, the motion to stay and associated briefing are found at D.I. 36, D.I. 37, and D.I. 38. In Civil Action No. 23-468-SRF, the motion to stay and associated briefing are found at D.I. 25, D.I. 28, and D.I. 31. Unless otherwise noted, all citations to docket entries in this Memorandum Order refer to lead Civil Action No. 22-1615-SRF.

parties, brought these civil actions to recover attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i). (*Id.* at ¶ 13)

3. APER subsequently filed complaints against Willis, K.M., and C.G. seeking reversal of the hearing panels' decisions. (C.A. No. 23-276-SRF, D.I. 2 at ¶¶ 36-37; C.A. No. 23-604-SRF, D.I. 1 at ¶¶ 40-41; C.A. No. 23-702-SRF, D.I. 1 at ¶¶ 46-47) By way of the pending motions to stay, APER seeks a stay of the hearing panels' decisions and all associated relief. (D.I. 45) Below are the specific forms of relief APER seeks to stay for each Student:

| RELIEF GRANTED BY DDOE SUBJECT TO APER'S REQUEST FOR STAY | WILLIS | K.M. | C.G. |
|---|---|---|---|
| Provide a full copy of the student's education records to the education representative and counsel[3] | ✓ | ✓ | ✓ |
| Hold an evaluation planning meeting with the student's educational representative to determine appropriate independent evaluations to be conducted (*e.g.*, Functional Behavior Assessment, Psychiatric, and Neuropsychological) | ✓ | | |
| Pay for independent educational evaluations | ✓ | ✓ | |
| Contract with a mental health service provider to provide services recommended by the psychiatrist who evaluated the student | ✓ | | |
| Develop an individualized education program ("IEP") based on the findings and recommendations in the independent evaluations | ✓ | ✓ | |
| Establish a special education trust in a specified amount | ✓<br>$141,900 | ✓<br>$139,965 | ✓<br>$232,000 |

---

[3] On April 22, 2025, the parties jointly brought to the court's attention HB 11, which is recently adopted legislation amending 14 *Del. C.* § 3130 regarding access to special education records. (D.I. 61) This legislation "clarifies that a parent's representative may obtain copies of a student's special education records." (*Id.* at 2)

4

4. **Legal standard.** Under Federal Rule of Civil Procedure 62(d), "a court may grant an injunction while an appeal is pending from an interlocutory order that refuses to grant the injunction." *Cipla Ltd. v. Amgen Inc.*, C.A. No. 19-44-LPS, 2019 WL 2053055, at *1 (D. Del. May 9, 2019) (citing Fed. R. Civ. P. 62(d)). In determining whether to grant a stay of administrative relief pending appeal under Rule 62(d), courts consider four factors similar to those employed in evaluating a motion for preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal citations and quotation marks omitted); *see also In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433 (internal citations and quotation marks omitted). Instead, it requires "an exercise of judicial discretion" that depends on the circumstances of a particular case. *Id.*

5. The four-factor test to stay an administrative panel decision does not apply to requests for injunctive relief encompassed by the stay-put provision of the IDEA. *See H.R. v. Dist. of Columbia*, 2022 WL 2110503, at *4 (D.D.C. Apr. 29, 2022) (explaining that the stay-put provision of the IDEA "turns [the] traditional framework on its head."). The stay-put provision states that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" 20 U.S.C. § 1415(j). The Third Circuit has compared the effect of § 1415(j) to "an automatic preliminary injunction" that prevents

5

schools from unilaterally excluding disabled students during the pendency of an appeal. *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996).

6. **Analysis.** The parties disagree on the applicable standard governing the motion to stay. APER and C.G. maintain that the four-factor test set forth in *Nken v. Holder* governs this dispute. (D.I. 47 at 7-9; C.A. No. 23-468-SRF, D.I. 28 at 2) Willis and K.M. contend that the court need not reach the four-factor test because the stay-put provision of the IDEA applies. (D.I. 46 at 3-4) Specifically, they argue that the hearing panel decisions constitute an agreement for changing the Students' educational placement to encompass the services and supports ordered by the hearing panel. (*Id.* at 4)

7. The stay-put provision of the IDEA governs APER's motion to stay. The Third Circuit has held that "a ruling by the education appeals panel in favor of the [Students'] position constitutes agreement" for purposes of defining the Students' current educational placement under the stay-put provision. *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 81 (3d Cir. 1996) (discussing *Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1996)). The stay-put provision "encompasses not only the actual physical placement of the child, but also the provision of disputed services to the child." *Bd. of Educ. of the Appoquinimink Sch. Dist. v. Johnson*, C.A. No. 06-770-JJF, 2008 WL 5043472, at *3 (D. Del. Nov. 25, 2008) (citing *Pardini v. Allegheny Intermed. Unit*, 420 F.3d 181, 192 (3d Cir. 2005)).

8. There is no dispute that the hearing panels found the Students' IEPs were deficient and failed to provide the Students with a FAPE. (D.I. 45 at 2-4; D.I. 46 at 4; C.A. No. 23-468-SRF, D.I. 25 at 2) Under the Supreme Court's decision in *Burlington* and the Third Circuit's decision in *Susquenita*, the hearing panel decisions in favor of the Students constitute an "agreement" for purposes of defining the Students' current placement pursuant to the stay-put

6

provision. *See Burlington*, 471 U.S. at 372; *Susquenita*, 96 F.3d at 81. This current placement requires APER to provide the disputed services ordered by the hearing panels, which are directed to ensuring the Students receive a FAPE. *See* ¶ 3, *supra*. To rule otherwise "would mean that the panel decision[s] in favor of the [Students are] of no practical significance until [they are] affirmed by a decision that cannot be or is not appealed." *Susquenita*, 96 F.3d at 84-85 (concluding that "the policies underlying the IDEA . . . favor imposing financial responsibility upon the local school district as soon as there has been an administrative panel or judicial decision establishing the pendent placement."); *see also Drinker*, 78 F.3d at 864-65 (explaining that the stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.").

9. The policy considerations described in *Susquenita* apply equally here. The Third Circuit explained that

> [a] child's placement during the course of administrative and judicial proceedings typically has great significance for all concerned. Where as in the present case review of a contested IEP takes years to run its course—years critical to the child's development—important practical questions arise concerning interim placement of the child and financial responsibility for that placement. The pendent placement provision was included in the IDEA to protect handicapped children and their parents during the review process.

*Susquenita*, 96 F.3d at 82 (internal citations and quotation marks omitted). In accordance with this precedent, APER is responsible not only for providing the educational services ordered at the administrative level, but also for funding the special education trusts during the pendency of the appeals of the hearing panel decisions. *Id.* at 87 (concluding that "the district's financial obligations with respect to the pendent placement are immediate and may not be deferred until the close of litigation."). The Third Circuit recognized the financial burden this imposes on the

school district, but it also observed that "school officials who conform to [the IDEA] need not worry about" incurring these financial burdens. *Id.* (quoting *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)).

10. Having determined that the stay-put provision governs the Students' current educational placements, the court need not reach APER's arguments regarding the four-factor test for a stay of the relief ordered by the hearing panels pending resolution of APER's appeals. *See H.R.*, 2022 WL 2110503, at *4 ("The traditional four-part test for a preliminary injunction does not apply to requests for injunctive relief under the stay-put provision[.]"). Because the stay-put provision requires APER to institute the services, supports, and other relief ordered by the hearing panels during the pendency of the appeals, APER's motion to stay the implementation of such relief is DENIED.

11. **Conclusion.** For the foregoing reasons, IT IS ORDERED that APER's motions to stay the underlying administrative decisions are DENIED in accordance with the following chart. (C.A. No. 22-1615-SRF, D.I. 45; C.A. No. 23-391-SRF, D.I. 36; C.A. No. 23-468-SRF, D.I. 25)

| RELIEF GRANTED BY DDOE SUBJECT TO APER'S REQUEST FOR STAY | WILLIS | K.M. | C.G. |
|---|---|---|---|
| Provide a full copy of the student's education records to the education representative and counsel | ✓ | ✓ | ✓ |
| Hold an evaluation planning meeting with the student's educational representative to determine appropriate independent evaluations to be conducted (*e.g.*, Functional Behavior Assessment, Psychiatric, and Neuropsychological) | ✓ | | |
| Pay for independent educational evaluations | ✓ | ✓ | |
| Contract with a mental health service provider to provide services recommended by the psychiatrist who evaluated the student | ✓ | | |

| Develop an individualized education program ("IEP") based on the findings and recommendations in the independent evaluations | ✓ | ✓ | |
| --- | --- | --- | --- |
| Establish a special education trust in a specified amount | ✓ $141,900 | ✓ $139,965 | ✓ $232,000 |

/s/ Sherry R. Fallon
Sherry R. Fallon
United States Magistrate Judge